UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SPORTS CAPITAL HOLDINGS | ) | |
| (ST. LOUIS), LLC, AND KIEL | ) | |
| CENTER PARTNERS, LP, | ) | |
| D/B/A SCOTTRADE CENTER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:12CV1108 SNLJ |
| | ) | |
| SCHINDLER ELEVATOR CORPORATION | ) | |
| AND KONE, INC. F/K/A MONTGOMERY | ) | |
| KONE INC., F/K/A MONTGOMERY | ) | |
| ELEVATOR COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the defendants' motions to dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(6). The motions have been fully briefed and are

ready for disposition.

## I.    Background

This lawsuit arises out of a "catastrophic mechanical failure" of an escalator inside

the Scottrade Center facility in St. Louis, Missouri. The subject escalator, a Montgomery

5E Solid Balustrade Model 4503 escalator, was installed in the Scottrade Center in 1994.

Defendant KONE, Inc. (KONE), as the successor in interest to Montgomery, designed

and manufactured the escalator. The escalator utilized an electronic brake board to

monitor the speed of the escalator and apply braking as necessary. After the original

design and manufacture of the escalator, KONE designed a new brake board mechanism

to retro-fit onto the subject escalator. The replacement brake board was installed approximately two months before the escalator malfunction.

On or about June 1, 2009, plaintiffs, doing business as Scottrade Center, entered into a written contract with Schindler Elevator Corporation (Schindler) for maintenance and repair of six passenger escalators at the Scottrade Center facility, including the subject escalator. In August 2009, Schindler technicians installed the KONE retro-fitted brake board on the subject escalator and coordinated and supervised the annual inspection of the subject escalator.

On October 8, 2009, the St. Louis Blues Hockey Club had its first home game of the season. After the game, as fans were leaving the arena, the escalator suffered a "catastrophic mechanical failure, ran out of control and crashed" resulting in the injuries of several persons riding the escalator, as well as damage to the escalator itself.

This lawsuit was originally filed in the Circuit Court for the City of St. Louis and was removed to this Court based on diversity jurisdiction. Plaintiffs filed a multi-count complaint against defendant Schindler alleging breach of contract, fraudulent misrepresentation, negligent misrepresentation, negligent hiring, negligent training, negligent supervision, implied indemnity, and punitive damages. Schindler filed a motion to dismiss the claims for fraudulent misrepresentation, negligent misrepresentation, negligent hiring, negligent training, negligent supervision, and punitive damages, which was granted by this Court.

Subsequently, plaintiffs filed a first amended complaint against defendant Schindler and adding defendant KONE. The first amended complaint includes claims of

breach of contract (Count I) and implied indemnity (Count IV) against Schindler and strict liability defective product (Count II), negligent design and manufacture (Count III), implied indemnity (Count IV), and punitive damages (Count V) against KONE. Schindler filed a motion to dismiss seeking dismissal of certain claims stated in Counts I and IV.  KONE filed a motion to dismiss seeking dismissal of plaintiffs' claims stated in Counts II, III, IV, and V.

## II.    Legal Standard – Motion to Dismiss

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)).  "Further, documents attached to or incorporated within a complaint are considered part of the pleadings, and courts may look at such documents for all purposes." *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459-60 (8th Cir. 2010); *Great Plains Trust Co. v. Union Pacific R. Co.*, 492 F.3d 986, 990 (8th Cir. 2007).

**III.    Discussion**

**A.    Defendant Schindler's Motion to Dismiss**

**1.    Counts I and IV – Contractual Liability Limitation**

Schindler argues that Counts I and IV of plaintiffs' first amended complaint should be dismissed to the extent plaintiffs seek damages that are expressly barred by the parties' contract.  Paragraph 3 of the contract's terms and conditions provides:

> [Schindler] will not be liable for damages of any kind, whether in contract or in tort, or otherwise, in excess of the annual price of this Agreement. We will not be liable in any event for special, indirect or consequential damages, which include but are not limited to loss of rents, revenues, profit, good will, or use of Equipment or property, or business interruption.

Schindler contends that this provision limits its liability for damages to the amount of the annual price of the contract and that any other damages claimed by plaintiffs are barred. Plaintiffs contend that the contractual liability limitation is ambiguous, unconscionable, and otherwise unenforceable to the extent it limits the amount of damages plaintiffs may recover and to the extent it purports to exempt Schindler from future liability for gross negligence.

The validity of a contractual liability limitation presents a question of law for the court. *Purcell Tire & Rubber Co. v. Exec. Beechcraft, Inc.*, 59 S.W.3d 505, 508 (Mo. banc 2001).  It is well-settled in Missouri that "[s]ophisticated parties have freedom of contract – even to make a bad bargain, or to relinquish fundamental rights." *Id.*  This freedom includes the right to contractually limit future remedies. *Id.*; *Roy A. Elam Masonry, Inc. v. Fru-Con Constr. Corp.*, 922 S.W.2d 783, 791 (Mo. App. E.D. 1996) ("Provisions in private contracts limiting or excluding liability for consequential damages

have been held not violative of public policy, provided the limitation or exclusion was not unconscionable."); *World Enterprises, Inc. v. Midcoast Aviation Services, Inc.*, 713 S.W.2d 606, 611 (Mo. App. E.D. 1986) ("[I]n contracts for services, consequential damages may be contractually limited or excluded). Limitations of liability do not violate public policy where the language is clear, unambiguous, unmistakable, and conspicuous. *Purcell Tire*, 59 S.W.3d at 509.

In *Purcell Tire & Rubber Co. v. Exec. Beechcraft, Inc.*, the Supreme Court of Missouri affirmed a trial court's enforcement of a contractual provision that limited a defendant's liability to the price of the parties' contract. 59 S.W.3d at 509-11. The plaintiff in *Purcell Tire*, a large retail tire dealer, sued the defendant aviation business for breach of contract and negligence, claiming $372,458 in damages allegedly attributable to the defendant's failure to discover an oil leak in the plaintiff's airplane during a pre-sale inspection. *Id.* at 508. The defendant moved for summary judgment on the basis of a provision in the parties' contract that provided: "It is expressly agreed that the liability, if any, of Executive Beechcraft, Inc. under this agreement shall be limited to the cost of services performed hereunder." *Id.* The trial court enforced the limitation of liability provision and the defendant confessed judgment for the $1,250 contract price. In affirming the trial court's enforcement of the contractual limitation of liability provision, the Supreme Court of Missouri found that the clause did not violate public policy, as it was clear, unambiguous, and unmistakable. *Id.* at 509. Further, the court found that the provision was not unconscionable and noted that courts rarely find liability limitations unconscionable where both parties are sophisticated businesses. *Id.* at 510.

Like the plaintiff in *Purcell Tire*, plaintiffs here contractually agreed that Schindler's liability, "whether in contract or in tort, or otherwise" would be limited to the annual price of the contract. Further, like the parties in *Purcell Tire*, the parties are sophisticated businesses. Despite these similarities, plaintiffs failed to address the *Purcell Tire* case in their briefing. The Court finds this deficiency troubling.

Plaintiffs contend the contract is ambiguous because the contract does not contain an "annual price." According to plaintiffs, annual price is not defined by the contract. Further, plaintiffs argue that the contract does not have an annual price because the contract had a four-year term and allowed for variable payment schedules and price adjustments. "Ambiguity depends on context. Contract language is not interpreted in a vacuum, but by reference to the contract as a whole." *Id.* at 510 (internal quotations and citations omitted). "Language that is ambiguous to an unsophisticated party may not be ambiguous to a sophisticated commercial entity." *Id.* Here, the contract's price provisions provide, in relevant part, as follows:

PRICE

In consideration of the services provided hereunder, you agree to pay us the sum of $5,535.00 per month, payable in annual installments of $66,420.00, exclusive of applicable taxes, subject to payment terms and Price Adjustment set forth below. You agree to pay, as an addition to the price herein, the amount of any current or future sales, use, excise or other tax applicable to the services provided hereunder. You may alternatively choose to make semi-annual payments of $33,542.10 (a 1% premium for a price of $5,590.35 per month; initial here if semi-annual ___), or quarterly payments of $17,103.15 (a 3% premium for a price of $5,701.05 per month; initial here if quarterly DS). This offer is firm for 90 days from the date of our proposal. Acceptance beyond that dale may require updates of the Price and Price Adjustment Provisions.

## PRICE ADJUSTMENT

The contract Price and labor rates for extra work will be adjusted annually, as of the date of the local labor rate adjustment, and will be increased or decreased on the basis of changes to the local straight time hourly rate for mechanics. If there is a delay in determining a new labor rate, or an interim determination of a new labor rate, we will notify you and adjust the price at the time of such determination, and we will retroactively bill or issue credit, as appropriate, for the period of such delay. We also reserve the right to adjust the contract price quarterly/annually on the basis of changes in other expenses such as fuel, waste disposal, government regulations or administrative costs.

## SPECIAL TERMS AND PRICING

A minimum of 20 man hours per month will be spent maintaining the equipment.

It is understood that standby will be provided for 4 events per year. – Assumes total of 32 hours on site, can be broken up! DS DB

The Price Adjustment as described will be capped at 3% per year. The price adjustment will take place every July. The first possible price adjustment taking place in 2010.

While plaintiffs are correct that annual price is not defined in the contract by a stated definition, annual price is defined within the context of the contract as a whole. Because the meaning of annual price can be clearly ascertained from the contract, it is not ambiguous. Additionally, the four-year term of the contract, the price adjustments, and the flexibility in payment arrangements (annual, semi-annual, or quarterly) do not create an ambiguity. Accordingly, the Court finds that the contract is not ambiguous.

For their second attempt to avoid the liability limitation, plaintiffs argue it is unenforceable as unconscionable because it fixes damages that are unreasonably low and disproportionately harsh. "Where both parties are sophisticated businesses and damages are economic, courts rarely find that liability limitations are unconscionable." *Purcell*, 59

S.W.3d at 510. In *Purcell Tire*, the Supreme Court of Missouri explicitly rejected an argument similar to that proffered by plaintiffs here. 59 S.W.3d at 510. There, the plaintiff tire dealer argued the contract's limitation of liability provision, which limited the defendant's liability to the price of the contract ($1,250) was unconscionable because it fixed damages that were disproportionately small in relation to the actual damages it allegedly sustained ($372,458). The same result is warranted here. Like the plaintiff in *Purcell Tire*, plaintiffs are sophisticated businesses who "have the freedom of contract – even to make a bad bargain, or to relinquish fundamental rights." *Id.* at 508. This Court finds that the contractual liability limitation is not unconscionable.

Finally, plaintiffs contend Schindler cannot contractually release itself from future liability for gross negligence. Plaintiffs argue that whether Schindler's actions or inactions are mere negligence or gross negligence is a question of fact for the jury to determine. This argument ignores the fact that plaintiffs' claims against Schindler sound in contract. Indeed, the only duties plaintiffs allege Schindler to have breached are those arising from the parties' contract. This Court previously dismissed with prejudice plaintiffs' negligence claims against Schindler. At this time, there is not a negligence claim pending against Schindler and, accordingly, there is no determination to be made regarding negligence. The issue of whether Schindler can contractually release itself from its own gross negligence is not before this Court.

This Court finds that the liability limitation is clear, unambiguous, unmistakable, and conspicuous and, as a result, does not violate public policy. Schindler's motion to dismiss plaintiffs' first amended complaint will be granted to the extent plaintiffs seek

damages that are expressly barred by the parties' contract.  The contractual liability limitation in the parties' contract limits Schindler's liability for damages to the amount of the annual price of the contract.  Additionally, the contract provides for reasonable attorneys' fees and costs to the prevailing party in the event of litigation.  Any other damages claimed by plaintiffs, including damages for loss of use, loss of goodwill, and damages incurred as a result of claims by injured third-parties, will be dismissed.

### 2.      Count IV - Implied Indemnity

Schindler argues that Count IV should be dismissed because plaintiffs and Schindler do not share identical, co-extensive duties with respect to third-party patrons of the Scottrade Center and, as a result, the doctrine of implied indemnity is inapplicable. "Indemnity is a right which inures to a person who has discharged a duty which is owed by him, but which, as between himself and another, should have been discharged by the other, so that if the second does not reimburse the first, the second is unjustly enriched to the extent that his liability has been discharged." *State ex rel. Manchester Ins. & Indem. Co. v. Moss*, 522 S.W.2d 772, 774 (Mo. banc 1975).  Under Missouri law, the doctrine of indemnity applies only where the indemnitee and indemnitor have co-extensive, identical duties. *Id.*; *Navigators Management Co., Inc. v. St. Paul Fire and Marine Ins. Co.*, 4:06CV1722 SNLJ, 2011 WL 6258488, at *1 (E.D. Mo. Dec. 15, 2011).

While Count IV is titled "implied indemnity," it references the contracts between plaintiffs and defendants, a tendered and rejected demand for indemnification, and the Missouri statute on contribution among joint tort-feasors (section 537.060 RSMo).  From the pleading, it is unclear as to whether plaintiffs are attempting to plead implied

indemnity, contractual indemnity, or contribution pursuant to Missouri statute. Indemnity and contribution are separate and distinct concepts. *SSM Health Care St. Louis v. Radiologic Imaging Consultants, LLP*, 128 S.W.3d 534, 539 (Mo. App. E.D. 2003). That said, in plaintiffs' briefing, they argue that they have an implied indemnity claim against Schindler because (1) Schindler would be unjustly enriched if it does not reimburse Scottrade for the duties that Scottrade discharged in its settlements with the injured third-party patrons and (2) that between plaintiffs and Schindler "identical obligations either explicitly exist, or should be imposed as a matter of law." Plaintiffs' arguments are not supported by their vague and confusing pleading in Count IV. Plaintiffs have not pled that Schindler would be unjustly enriched or that plaintiffs and Schindler have identical, co-extensive duties. This Court declines to review points set out in briefing not in the pleading itself. As to defendant Schindler, Count IV will be dismissed without prejudice.

### B.    Defendant KONE's Motion to Dismiss

### 1.    Economic Loss Doctrine

KONE argues that plaintiffs' tort claims for damages are expressly barred by Missouri's economic loss doctrine because plaintiffs suffered only economic losses. "Missouri's economic loss doctrine bars recovery under strict liability or negligence theories if the only damage is to the product sold." *OneBeacon Ins. Co. v. Deere & Co.*, 778 F.Supp.2d 1005 (8th Cir. 2011) (citing *Sharp Bros. Contracting Co. v. American Hoist & Derrick Co.*, 703 S.W.2d 901, 903 (Mo. banc 1986); *Clevenger & Wright Co. v. A.O. Smith Harvestore Prod. Inc.,* 625 S.W.2d 906, 909 (Mo. App. W.D. 1981)). "The

remedy available in such cases is limited to contract or warranty claims." *Id.* "When a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong." *Id.* (quoting *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871-72 (1986)).

The economic loss doctrine was set out by the Supreme Court of Missouri in *Crowder v. Vandendeale,* where, in an action by a subsequent home purchaser against the home builder to recover damages for latent structural defects, the court held that the purchaser's suit under an implied warranty theory of recovery was an adequate remedy. 564 S.W.2d 879, 884 (Mo. banc 1978). The court accordingly barred the plaintiff's attempt to recover on his second theory of recovery based on the builder's failure to use ordinary care. *Id.* The Supreme Court of Missouri thus "indicated that liability in tort is only appropriate in cases in which recovery is sought for 'personal injury, including death or property damage . . . .'" *Self v. Equilon Enterprises, L.L.C.,* 2005 WL 3763533, at *8 (E.D. Mo. March 30, 2005) (quoting *Crowder,* 564 S.W.2d at 881); *Sharp Bros. Contracting Co. v. American Hoist & Derrick Co.*, 703 S.W.2d 901, 903 (Mo. banc 1986) (holding that a plaintiff cannot recover on a strict liability theory in tort where the only damage is the product sold, no personal damage).

Plaintiffs argue that the doctrine is not applicable because there was personal injury and the escalator damaged itself in a violent occurrence. In support of their arguments, plaintiffs allege facts in their response that were not pled in the first amended petition. Again, this Court will not review points set out in briefing not in the pleading

itself.  There is, however, sufficient pleading of personal injury in the first amended petition to consider that argument.

Plaintiffs' first amended petition alleges personal injury to patrons of Scottrade as a result of the escalator malfunction.  Defendant KONE characterizes this loss as the "economic and commercial loss for the payments and settlement of claims made by its patrons."  It is indisputable that the escalator did not merely damage itself – there was personal injury to patrons of Scottrade.  This Court finds that the tort claims are not barred by the economic loss doctrine and KONE's motion to dismiss on this basis will be denied.

### 2.    Statute of Repose

KONE maintains that the plaintiffs' claims are barred by Missouri's statute of repose as set forth in section 516.097 RSMo and its ten year statute of limitations.  To the extent plaintiffs plead claims alleging strict liability for defective product and negligent design and manufacture with regard to the replacement brake board installed approximately two months before the escalator malfunction, the statute of repose is not a bar to such claims.  The issue of the bar of the statute of repose would be limited to the escalator as originally installed in 1994.

The statute of repose is an affirmative defense.  *See Travelers Indemnity Co. of America v. The Williams-Carver Co*., 326 S.W.3d 45, 47 (Mo. App. W.D. 2010).  Section 516.097 is "designed to protect architects, engineers, and builders against tort liability for defective improvements to real property."  *Lay v. P & G Health Care, Inc.*, 37 S.W.3d 310, 317 (Mo. App. W.D. 2000).  It provides, in relevant part:

1.  Any action to recover damages for economic loss, personal injury, property damage or wrongful death arising out of a defective or unsafe condition of any improvement to real property, including any action for contribution or indemnity for damages sustained on account of the defect or unsafe condition, shall be commenced within ten years of the date on which such improvement is completed.

2.  This section shall only apply to actions against any person whose sole connection with the improvement is performing or furnishing, in whole or in part, the design, planning or construction, including architectural, engineering or construction services, of the improvement.

Section 516.097 RSMo.

"Missouri applies an "activity analysis' to determine whether a defendant's activity is solely connected with the design, planning and construction of the improvement." *Travelers Indemnity Co. of America*, 326 S.W.3d at 48-49 (citing *Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822, 837 (Mo. banc 1991)). "[I]f a defendant has any connection that gives rise to liability with respect to an improvement other than by design, planning, or construction, section 516.097 is not available as an affirmative defense." *Id.* at 49 (quoting *Lay*, 37 S.W.3d at 321). "The defendant's sole connection to the defective or unsafe improvement to real property must be as an architect, engineer, or builder. *Id.* "The statute does not protect a manufacturer whose standard product is fabricated at the manufacturer's factory, made available to the general public, and then furnished for the inclusion in the improvement by the persons constructing the improvement under circumstances where the manufacturer has no substantial on-site construction activity." *Id.* (internal quotations and citations omitted). "To invoke the affirmative defense, a manufacturer must have substantial participation at the

construction site in significant activities in installing or incorporating the product into the real property." *Id.*

In their briefing, the parties argue disputed facts and the merits as to the application of the statute of repose. There are a number of issues and factors to be considered with regard to the determination of the applicability of the statute of repose. Because it is an affirmative defense, defendant KONE bears the burden of proof. Here, the defense requires a factual inquiry and it is not amenable to resolution on a motion to dismiss plaintiffs' first amended complaint. *See Blankenship v. Chamberlain*, 695 F.Supp.2d 966, 971 (E.D. Mo. 2010) ("[g]enerally speaking, an affirmative defense based on a statute of limitations that requires a factual inquiry is not amenable to resolution on a motion to dismiss). Accordingly, the motion to dismiss on this basis will be denied.

### 3.     Implied Indemnity

KONE argues that Count IV should be dismissed because plaintiffs and KONE do not share identical, co-extensive duties with respect to third-party patrons of the Scottrade Center and, as a result, the doctrine of implied indemnity is inapplicable. KONE's argument is essentially the same as Schindler's argument on this claim by plaintiffs. As discussed above with regard to defendant Schindler's motion, plaintiffs have similarly not pled that defendant KONE would be unjustly enriched or that plaintiffs and KONE have identical, co-extensive duties. As to defendant KONE, Count IV will be dismissed without prejudice.

### 4. Punitive Damages

KONE maintains that Count V must be dismissed because there is no independent cause of action for punitive damages under Missouri law. KONE is correct in that "[t]here is no independent cause of action for punitive damages under either federal or Missouri law . . . ." *Jackson v. Wiersema Charter Service, Inc.*, 4:08cv27 JCH, 2009 WL 1310064, at *3 (E.D. Mo. May 11, 2009). Under Missouri law, "[a] punitive damage claim is not a separate cause of action, it must be brought in conjunction with a claim for actual damages." *Misischia v. St. John's Mercy Med. Ctr.,* 30 S.W.3d 848, 866 (Mo. App. E.D. 2000).

In their response, plaintiffs state they did not intend to bring a separate punitive damages claim but instead, the punitive damages claim is brought in conjunction with their claims for actual damages within their strict liability and negligent design and manufacture claims. Plaintiffs' stated intention and plaintiffs' pleading are not consistent. Count V will be dismissed. The dismissal is without prejudice to allow plaintiffs an opportunity to seek to amend their complaint to bring punitive damages claims in conjunction with their remaining claims to the extent punitive damages are proper under such claims.

## IV. Conclusion

For the reasons set forth above, Schindler's motion is granted and KONE's motion is granted in part and denied in part.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Schindler Elevator Corporation's motion to dismiss (ECF #23) is **GRANTED**. Plaintiffs' claims for damages are limited to the annual price of the parties' contract and reasonable attorneys' fees and costs. All other damages that are expressly barred by the parties' contract, including damages for loss of use, loss of goodwill, and damages incurred as a result of claims by injured third-parties, are **DISMISSED with prejudice**. Finally, Count IV is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that defendant KONE, Inc.'s motion to dismiss (ECF #33) is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** as to Counts IV and V, which are **DISMISSED without prejudice**. The motion is **DENIED** in all other respects.

Dated this 10th day of April, 2014.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE